**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FEDERAL TRADE COMMISSION,
*Plaintiff-Appellee*,

v.

COMMERCE PLANET, INC., a corporation; MICHAEL HILL; AARON GRAVITZ,
*Defendants*,

and

SUPERFLY ADVERTISING, INC., a Delaware corporation, FKA Morlex, Inc.; SUPERFLY ADVERTISING, INC., an Indiana corporation,
*Third-party-defendants*,

and

CHARLES GUGLIUZZA,
*Defendant-Appellant*.

No. 12-57064

D.C. No.
8:09-cv-01324-
CJC-RNB

OPINION

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted
February 9, 2015—Pasadena, California

Filed March 3, 2016

Before: Consuelo M. Callahan, Paul J. Watford, and
John B. Owens, Circuit Judges.

Opinion by Judge Watford

## SUMMARY[*]

### Restitution

The panel affirmed in part, and vacated in part, the district court's order finding that Commerce Planet, Inc. violated § 5 of the Federal Trade Commission ("FTC") Act; holding Charles Gugliuzza, the former President of Commerce Planet, Inc., personally liable for the company's unlawful conduct; and ordering him to pay $18.2 million in restitution.

The panel held that the district court had the authority to award restitution under § 13(b) of the FTC Act. The panel rejected Gugliuzza's contention that any such award must be limited to the unjust gains each defendant personally received. The panel held that because joint and several liability was permissible, restitution awards need not be limited to the funds each defendant personally received from the wrongful conduct. The panel noted that the judgment

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

against Gugliuzza did not actually hold him jointly and severally liable for Commerce Planet's restitution obligations, and this appeared to be an oversight by the district court which the panel did not have the power to correct. The panel vacated the judgment and remanded. The panel concluded that on remand the district court may reinstate the $18.2 million restitution award if it holds Gugliuzza jointly and severally liable; otherwise the award must be limited to the unjust gains Gugliuzza himself received.

The panel held that the district court did not abuse its discretion in calculating the amount of the restitution award. The panel held that the district court properly followed, and applied, the two-step burden-shifting framework for calculating restitution awards under § 13(b) of the FTC Act, which other circuits have adopted and which the panel adopted as the law of this circuit. Under the first step, the FTC bore the burden of proving that the amount it sought in restitution reasonably approximated the defendant's unjust gains; and at the second step, the burden shifted to the defendant to show that the FTC's figures overstated the amount of the defendant's unjust gains. The panel concluded that the FTC met its burden at the first step, having proved that all of the revenues represented presumptively unjust gains; and Gugliuzza failed to meet his burden at step two to show that the FTC's figure overstated Commerce Planet's restitution obligations.

## COUNSEL

Erwin Chemerinsky (argued), University of California, Irvine, School of Law, Irvine, California; Theodore J. Boutrous Jr., M. Sean Royall, and Blaine H. Evanson, Gibson, Dunn & Crutcher LLP, Los Angeles, California; Michael V Schafler and Jeffrey M. Chemerinsky, Caldwell Leslie & Proctor, PC, Los Angeles, California, for Defendant-Appellant.

Michele Arington (argued), Attorney, Jonathan E. Nuechterlein, General Counsel, John F. Daly, Deputy General Counsel for Litigation, Office of the General Counsel, Federal Trade Commission, Washington, D.C.; Eric D. Edmondson, David M. Newman, Kerry O'Brien, and Evan Rose, Federal Trade Commission, San Francisco, California, for Plaintiff-Appellee.

## OPINION

WATFORD, Circuit Judge:

The Federal Trade Commission (FTC) sued Commerce Planet, Inc., and three of its top officers for violating § 5(a) of the FTC Act, which prohibits unfair or deceptive business practices. 15 U.S.C. § 45(a). The company and two of the individual defendants settled with the FTC. The remaining defendant, appellant Charles Gugliuzza, elected to stand trial. After a 16-day bench trial, the district court found that Commerce Planet had violated § 5(a) and held Gugliuzza, the company's former president, personally liable for the company's unlawful conduct. The court permanently

enjoined Gugliuzza from engaging in similar misconduct and ordered him to pay $18.2 million in restitution.

In a memorandum disposition filed together with this opinion, we reject Gugliuzza's challenges to the district court's liability ruling. We address here his arguments contesting the validity of the restitution award.[1]

I

The FTC brought suit to enjoin Commerce Planet's deceptive marketing of a product called "OnlineSupplier." The company touted OnlineSupplier as a website-hosting service that would enable consumers to make money by selling products online. The company charged a membership fee for the service that ranged over time from $29.95 to $59.95 per month.

---

[1] We have jurisdiction over this appeal despite the fact that Gugliuzza filed his notice of appeal shortly after filing a Chapter 7 bankruptcy petition. The filing of a bankruptcy petition triggers an automatic stay, which generally prohibits "the commencement or continuation" of a preexisting judicial action against the debtor, even when the debtor himself continues the case by filing a notice of appeal. 11 U.S.C. § 362(a)(1); *Parker v. Bain*, 68 F.3d 1131, 1135–36 (9th Cir. 1995). However, the automatic stay does not prevent the commencement or continuation of an action by a governmental unit such as the FTC to enforce its police or regulatory power, 11 U.S.C. § 362(b)(4), which the action against Gugliuzza clearly is. *See City & County of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1123–26 (9th Cir. 2006). Gugliuzza's bankruptcy filing would stay any effort by the FTC to *enforce* the judgment in this case, *see* 11 U.S.C. § 362(a)(2), but it does not preclude us from reviewing the propriety of the district court's entry of judgment, *see NLRB v. Continental Hagen Corp.*, 932 F.2d 828, 834–35 (9th Cir. 1991).

Commerce Planet sold OnlineSupplier through its website. The landing page for the website, however, said nothing about OnlineSupplier. What consumers saw instead was an offer for a free "Online Auction Starter Kit" that explained how they could sell products on eBay. To obtain the starter kit, consumers needed to enter their shipping address and a valid credit card number to pay for shipping and handling ($1.95 for standard delivery, $7.95 for expedited delivery). Buried in the fine print for this transaction was an advisement stating that, by ordering the free starter kit, consumers were also agreeing to purchase OnlineSupplier through what is known as a "negative option." Here, that meant consumers received OnlineSupplier at no charge during a 14-day trial period, but if they failed to take affirmative steps to cancel within that period the company automatically charged their credit cards for the recurring monthly membership fee. Many consumers did not realize that by ordering the free starter kit they had also agreed to purchase OnlineSupplier. They first learned of that fact when the monthly charges for the service began showing up on their credit card bills.

The district court found that Commerce Planet's failure to adequately disclose the negative option constituted an unfair and deceptive practice that violated § 5(a) of the FTC Act. In addition, the court held Gugliuzza personally liable for the company's unlawful conduct during the two-and-a-half-year period he exercised operational control over the company, first as a consultant and then as the company's president. Throughout that period Gugliuzza oversaw and directed the marketing of OnlineSupplier, which included reviewing and approving the manner in which the negative option was disclosed to consumers.

In addition to enjoining future unlawful conduct, the district court ordered Gugliuzza to pay $18.2 million in restitution. The court arrived at that figure by determining that Commerce Planet's net revenues from the sale of OnlineSupplier during the relevant period totaled $36.4 million. The court credited Gugliuzza's assertion that it would be unfair to assume that *all* consumers who purchased OnlineSupplier were deceived by the company's inadequate disclosure of the negative option. But because Gugliuzza failed to offer any reliable method of determining how many consumers were *not* deceived, the court relied on testimony from one of the FTC's experts, who opined that "most" consumers would have been deceived by the manner in which the negative option was disclosed. Based on that testimony, the court estimated as a "conservative floor" that at least half the consumers who purchased OnlineSupplier were deceived by Commerce Planet's marketing practices. The court therefore reduced the restitution award to $18.2 million, one-half of the net revenues Commerce Planet received from the sale of OnlineSupplier during the relevant period.

## II

Gugliuzza challenges the validity of the restitution award on two fronts. First, he contends that the district court either lacked the authority to award restitution at all or at the very least had to limit the award to the unjust gains he personally received, which in this case totaled roughly $3 million. Second, Gugliuzza argues that even if he can be held liable for restitution exceeding his own unjust gains, the district court's $18.2 million award is nonetheless arbitrary and must be reduced.

A

The district court had the authority to award restitution under § 13(b) of the FTC Act. Section 13(b) provides in relevant part that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction." 15 U.S.C. § 53(b). Although this provision mentions only injunctive relief, we have held that it also empowers district courts to grant "any ancillary relief necessary to accomplish complete justice," including restitution. *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994) (quoting *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982)).

We grounded this holding on the Supreme Court's decision in *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946). That case involved an action brought by the government under § 205(a) of the Emergency Price Control Act of 1942. The government sued to enjoin the defendant from charging excessive rents in violation of the Act and to obtain restitution of the excess rents already collected. The defendant argued that § 205(a) did not authorize an award of restitution, as the statute spoke only of applications for "a permanent or temporary injunction, restraining order, or other order." *Id.* at 397. The Court disagreed. It held that by authorizing the issuance of injunctive relief, the statute invoked the court's equity jurisdiction, which carries with it "all the inherent equitable powers of the District Court" unless the Act provided otherwise. *Id.* at 398. Those equitable powers are comprehensive. To ensure that "complete rather than truncated justice" is done, a court sitting in equity may "go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary

under the circumstances." *Id.* That is especially true in cases involving the public interest, the Court held, such as actions brought by the government to enforce a regulatory statute. In those cases the court's "equitable powers assume an even broader and more flexible character than when only a private controversy is at stake." *Id.* Moreover, limitations on the court's equitable jurisdiction are not to be casually inferred. "Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Id.*

In light of these principles, the Court had little difficulty concluding that ordering a defendant to pay restitution fell comfortably within the scope of the broad equitable authority conferred by § 205(a). "Nothing is more clearly a part of the subject matter of a suit for an injunction than the recovery of that which has been illegally acquired and which has given rise to the necessity for injunctive relief." *Id.* at 399. Indeed, ordering a defendant to return unjust gains, the Court noted, is "within the highest tradition of a court of equity." *Id.* at 402.

Under *Porter* and our cases applying it, district courts have the power to order payment of restitution under § 13(b) of the FTC Act. The equitable jurisdiction to enjoin future violations of § 5(a) carries with it the inherent power to deprive defendants of their unjust gains from past violations, unless the Act restricts that authority. We see nothing in the Act that does.

Gugliuzza contends that § 19(b) of the FTC Act, 15 U.S.C. § 57b(b), eliminates a court's power to award restitution under § 13(b), but we have refused to read § 19(b)

in that manner.[2]   For one thing, § 19 itself states that the "[r]emedies provided in this section are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law." 15 U.S.C. § 57b(e); *see H.N. Singer*, 668 F.2d at 1113.  For another thing, the Court in *Porter* rejected essentially the same argument Gugliuzza makes here. The defendant in that case argued that courts could not award restitution under § 205(a) of the Emergency Price Control Act because a separate provision of the Act—§ 205(e)— authorized suits by the government to recover damages.  The Court held that, to the extent a court exercising its equitable jurisdiction under § 205(a) might otherwise have been able to award damages, "§ 205(e) supersedes that possibility and provides an exclusive remedy relative to damages." *Porter*, 328 U.S. at 401.  However, § 205(e) in no way eliminated a court's power under § 205(a) to award *restitution*, a remedy that "differs greatly" from the damages remedy available under § 205(e). *Id.* at 402.  We think the same can be said of the relationship between §§ 13(b) and 19(b) of the FTC Act. While § 19(b) precludes a court from awarding damages when proceeding under § 13(b), it does not eliminate the court's inherent equitable power to order payment of restitution.

Gugliuzza also contends that, even if a court may award restitution under § 13(b), any such award must be limited to the unjust gains each defendant personally received.  We find no support in our case law for this proposition.  Restitution does involve the return to the plaintiff of gains a defendant has unjustly received.  Restatement (Third) of Restitution and

---

[2]   Section 19(b) authorizes a court to award, in actions brought to enforce the FTC's cease-and-desist orders, "the refund of money or return of property [and] the payment of damages." 15 U.S.C. § 57b(b).

Unjust Enrichment § 1 cmt. a (2011). But the relevant question in a case like this one—in which an individual defendant violates the FTC Act by acting in concert with a corporate entity—is whether the individual may be held personally liable for restitution of the corporation's unjust gains. The answer is yes—provided the requirements for imposing joint and several liability are satisfied, and here they are.

We have established a two-pronged test for determining when an individual may be held personally liable for corporate violations of the FTC Act. That test requires the FTC to prove that the individual: (1) participated directly in, or had the authority to control, the unlawful acts or practices at issue; and (2) had actual knowledge of the misrepresentations involved, was recklessly indifferent to the truth or falsity of the misrepresentations, or was aware of a high probability of fraud and intentionally avoided learning the truth. *FTC v. Network Services Depot, Inc.*, 617 F.3d 1127, 1138–39 (9th Cir. 2010); *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009). The district court found that the FTC's proof satisfied both prongs of this test and, as explained in the accompanying memorandum disposition, those findings are adequately supported by the record.

If an individual may be held personally liable for corporate violations of the FTC Act under this test, nothing more need be shown to justify imposition of joint and several liability for the corporation's restitution obligations. Satisfaction of the test establishes the degree of collaboration between co-defendants necessary to justify joint and several liability in analogous contexts, such as actions brought by the Securities and Exchange Commission (SEC) to obtain disgorgement in securities fraud cases. *See, e.g.*, *SEC v. First*

*Pacific Bancorp*, 142 F.3d 1186, 1191–92 (9th Cir. 1998); *Hateley v. SEC*, 8 F.3d 653, 656 (9th Cir. 1993). For that reason, in actions brought by the FTC, we have repeatedly held individuals jointly and severally liable for a corporation's restitution obligations without requiring an evidentiary showing beyond the findings needed to satisfy the two-pronged test described above. *See Network Services Depot*, 617 F.3d at 1138–39; *Stefanchik*, 559 F.3d at 927, 930–32; *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170–71 (9th Cir. 1997); *cf. FTC v. Gill*, 265 F.3d 944, 954, 958–59 (9th Cir. 2001) (joint and several liability for two individual co-defendants).

Notwithstanding the cases just cited, Gugliuzza contends that a court exercising its inherent equitable powers under § 13(b) lacks authority to impose joint and several liability because that is a form of liability only the law courts could impose. Gugliuzza is wrong. Equity courts have long exercised the power to impose joint and several liability, most notably in cases involving breach of the duties imposed by trust law. *See, e.g.*, *Jackson v. Smith*, 254 U.S. 586, 589 (1921); Restatement of Trusts § 258 cmt. a (1935); 4 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 1081, at 231–32 (5th ed. 1941). We therefore see no basis for holding that courts are categorically precluded from imposing joint and several liability in actions brought under § 13(b).

Because joint and several liability is permissible, restitution awards need not be limited to the funds each defendant personally received from the wrongful conduct, as Gugliuzza urges. Defendants held jointly and severally liable for payment of restitution are liable for the unjust gains the defendants *collectively* received, even if that amount exceeds (as it usually will) what any one defendant pocketed from the

unlawful scheme.  Indeed, we have previously upheld joint and several liability for payment of restitution even though the award exceeded the unjust gains any individual defendant personally received.  *See Network Services Depot*, 617 F.3d at 1137–38; *Stefanchik*, 559 F.3d at 931–32; *Gill*, 265 F.3d at 954, 959.  The same is true in disgorgement actions brought by the SEC, cases in which courts also exercise the broad equitable powers described in *Porter*.  There, too, courts have upheld disgorgement orders imposed jointly and severally that exceeded the unjust gains any one defendant personally received.  *See, e.g.*, *SEC v. Platforms Wireless International Corp.*, 617 F.3d 1072, 1098 (9th Cir. 2010); *SEC v. Clark*, 915 F.2d 439, 453–54 (9th Cir. 1990).

Gugliuzza's argument against joint and several liability rests primarily on *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), but we do not think that decision has any bearing on the analysis here.  In *Great-West*, the Court interpreted the meaning of the phrase "other appropriate equitable relief" in § 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3), a provision that authorizes suits by private parties alleging violations of ERISA-imposed duties.  The Court held that a plaintiff may obtain an award of restitution under that provision only if the plaintiff seeks "equitable" rather than "legal" restitution.    534 U.S. at 213–14.  "Equitable" restitution requires tracing the money or property the plaintiff seeks to recover to identifiable assets in the defendant's possession (thus permitting imposition of a constructive trust or equitable lien), whereas "legal" restitution seeks imposition of "a merely personal liability upon the defendant to pay a sum of money."  *Id.* at 213 (quoting Restatement of Restitution § 160 cmt. a (1936)).

Gugliuzza concedes (correctly) that the tracing requirements for "equitable" restitution do not apply in § 13(b) actions. *See FTC v. Bronson Partners, LLC*, 654 F.3d 359, 373–74 (2d Cir. 2011). Adopting those tracing requirements would greatly hamper the FTC's enforcement efforts by, among other things, precluding restitution of any funds the defendant has wrongfully obtained but already managed to spend on non-traceable items. *See Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 136 S. Ct. 651, 657–62 (2016). We have never applied that rule in § 13(b) cases.

Given Gugliuzza's concession that tracing requirements do not apply, it is far from clear what relevance he contends *Great-West* has to this case. He appears to argue (contrary to his concession) that courts proceeding under § 13(b) must make the same "fine distinction" between legal and equitable restitution required under ERISA § 502(a)(3). *Great-West*, 534 U.S. at 214. We take a different view.

The Court's holding in *Great-West* relied heavily on *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), where the Court stated that the phrase "other appropriate equitable relief" could be construed to mean one of two things: either "whatever relief a court of equity is empowered to provide in the particular case at issue," or, more narrowly, only "those categories of relief that were *typically* available in equity." *Id.* at 256. The Court felt compelled to adopt the latter, more narrow reading because it assumed that Congress intended "equitable relief" as a limitation on the relief available under § 502(a)(3). Because equity courts could award all forms of relief—whether legal or equitable—for breach of trust, the Court thought reading the phrase "equitable relief" to mean

whatever relief a court of equity could provide "would limit the relief *not at all*." *Id.* at 257.

The interpretive constraints facing the Court in *Great-West* and *Mertens* are wholly absent here. We do not have before us a statute that limits the court to providing "equitable relief." Section 13(b) invokes a court's equity jurisdiction by authorizing issuance of injunctive relief, so absent a clear limitation expressed in the statute, Congress is deemed to have authorized issuance of "whatever relief a court of equity is empowered to provide in the particular case at issue." *Mertens*, 508 U.S. at 256. That includes the power "to award complete relief even though the decree includes that which might be conferred by a court of law," *Porter*, 328 U.S. at 399, such as monetary relief that would traditionally be viewed as "legal." 1 Dan B. Dobbs, Law of Remedies § 2.7, at 180 (2d ed. 1993). Absent a clear textual basis for doing so, reading into § 13(b) the remedial limitations imposed in *Great-West* and *Mertens* would be particularly ill-advised, given the admonition in *Porter* that a court's inherent equitable powers "assume an even broader and more flexible character" when the government seeks to enforce a regulatory statute like § 13(b), as opposed to "when only a private controversy is at stake," as is true under § 502(a)(3). *Porter*, 328 U.S. at 398.

Gugliuzza contends that if the district court may award what amounts to "legal" restitution as defined in *Great-West*, then the Seventh Amendment afforded him the right to have his case tried to a jury. The Supreme Court has held that the Seventh Amendment preserves the right to trial by jury in statutory actions seeking traditional legal remedies, such as compensatory damages or civil penalties. *Tull v. United States*, 481 U.S. 412, 422–23 (1987); *Curtis v. Loether*, 415

U.S. 189, 195–96 (1974). But the Court has consistently stated that restitution is an equitable remedy for Seventh Amendment purposes, without drawing any distinction between the legal and equitable forms of that relief. *See Great-West*, 534 U.S. at 229 (Ginsburg, J., dissenting). For example, in *Teamsters v. Terry*, 494 U.S. 558 (1990), the Court noted that "we have characterized *damages* as equitable where they are restitutionary," *id.* at 570 (emphasis added), which strongly suggests that such an award is considered equitable under the Seventh Amendment even if imposed as a merely personal liability upon the defendant. That view may need to be reconsidered in light of *Great-West*'s holding, but we regard that as a matter the Supreme Court must resolve. For now at least, so long as a court limits an award under § 13(b) to restitutionary relief, the remedy is an equitable one for Seventh Amendment purposes and thus confers no right to a jury trial. *See Bronson Partners*, 654 F.3d at 374; *FTC v. Verity International, Ltd.*, 443 F.3d 48, 66–67 (2d Cir. 2006).

Having said all this, we note that the judgment entered against Gugliuzza does not actually hold him jointly and severally liable for Commerce Planet's restitution obligations. The FTC asserts that it requested such relief below and that the district court's failure to provide it was a mere oversight. That seems plausible, since the district court otherwise had no basis for ordering Gugliuzza to pay $18.2 million in restitution. Nevertheless, if the failure to impose joint and several liability was indeed an oversight, we have no power to correct it ourselves. We must therefore vacate the judgment. If on remand the district court decides, in the exercise of its discretion, to hold Gugliuzza jointly and severally liable with Commerce Planet, it may reinstate the

$18.2 million restitution award.  Otherwise, the award must be limited to the unjust gains Gugliuzza himself received.[3]

B

Gugliuzza also contests the amount of the restitution award, on the ground that the district court arbitrarily determined that Commerce Planet's unjust gains totaled $18.2 million.  The district court did not abuse its discretion in calculating the amount of the award.  The court followed, and properly applied, the two-step burden-shifting framework that other circuits have adopted for calculating restitution awards under § 13(b).  *See, e.g.*, *Bronson Partners*, 654 F.3d at 368–69; *FTC v. Kuykendall*, 371 F.3d 745, 766 (10th Cir. 2004) (en banc); *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997).  We have not yet had occasion to adopt that framework as the law of our circuit in § 13(b) cases, but we do so now.  *Cf. Platforms Wireless*, 617 F.3d at 1096 (adopting essentially the same burden-shifting framework for SEC disgorgement cases).

Under the first step, the FTC bears the burden of proving that the amount it seeks in restitution reasonably approximates the defendant's unjust gains, since the purpose of such an award is "to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction."  1 Dobbs, Law of Remedies § 4.1(1), at 552.

---

[3] Commerce Planet and the other individual co-defendants settled with the FTC before trial for a total of $522,000.  The only argument Gugliuzza makes with respect to the impact of these settlements is that any award against him should be offset by what his co-defendants have already paid. We agree that the FTC is not entitled to a double recovery.  On remand the district court should ensure that Gugliuzza receives a credit for any sums the FTC has collected from the other defendants.

Unjust gains in a case like this one are measured by the defendant's net revenues (typically the amount consumers paid for the product or service minus refunds and chargebacks), not by the defendant's net profits. *Bronson Partners*, 654 F.3d at 374–75; *accord FTC v. Washington Data Resources, Inc.*, 704 F.3d 1323, 1327 (11th Cir. 2013) (per curiam); *Febre*, 128 F.3d at 536. Nor are unjust gains measured by the consumers' total losses; that would amount to an award of damages, a remedy available under § 19(b) but precluded under § 13(b). *See Porter*, 328 U.S. at 401–02; *Bronson Partners*, 654 F.3d at 366–68. In many cases, however, the defendant's unjust gain "will be equal to the consumer's loss because the consumer buys goods or services directly from the defendant." *Verity*, 443 F.3d at 68. The defendant's unjust gains and consumers' losses may diverge in cases where "some middleman not party to the lawsuit takes some of the consumer's money before it reaches a defendant's hands." *Id.* But that is not a concern in this case; consumers purchased OnlineSupplier directly from Commerce Planet.

If the FTC makes the required threshold showing, the burden then shifts to the defendant to show that the FTC's figures overstate the amount of the defendant's unjust gains. Any risk of uncertainty at this second step "fall[s] on the wrongdoer whose illegal conduct created the uncertainty." *Bronson Partners*, 654 F.3d at 368 (quoting *Verity*, 443 F.3d at 69).

The FTC carried its initial burden at step one. It presented undisputed evidence that Commerce Planet received $36.4 million in net revenues from the sale of OnlineSupplier during the relevant period. The FTC proved that Commerce Planet made material misrepresentations—by

not adequately disclosing the negative option—and that the misrepresentations were widely disseminated. As a result, the FTC was entitled to a presumption that all consumers who purchased OnlineSupplier did so in reliance on the misrepresentations. *See FTC v. Figgie International, Inc.*, 994 F.2d 595, 605–06 (9th Cir. 1993) (per curiam). The FTC having proved that all of the $36.4 million in net revenues represented presumptively unjust gains, the burden shifted to Gugliuzza to show that the FTC's figure overstated Commerce Planet's restitution obligations.

Gugliuzza attempted to meet his burden by asserting that not all of the consumers who purchased OnlineSupplier were deceived by Commerce Planet's misrepresentations. Had Gugliuzza offered a reliable method of quantifying what portion of the consumers who purchased OnlineSupplier did so free from deception, he might well have succeeded in showing that not all of the $36.4 million in revenues represented unjust gains. But he failed to do so. He did attempt to introduce the testimony of an expert, Dr. Kenneth Deal, who opined, based on the results of a consumer survey conducted by a third party, that not many of Commerce Planet's consumers were actually deceived. The district court properly refused to consider that testimony because Dr. Deal did not conduct the survey himself, and neither he nor Gugliuzza could demonstrate that the survey was "conducted according to accepted principles." *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1087 (9th Cir. 2005) (internal quotation marks omitted); *see Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997).

Gugliuzza attempted to support his contention that not all consumers were deceived by pointing out that 45% of consumers cancelled within the trial period, which indicated

that those consumers, at least, must have known about the negative option. That fact, however, sheds no light on what portion of the $36.4 million in net revenues represents unjust gains. Consumers who cancelled within the trial period may indeed not have been deceived, but the payments made by those consumers were not included in the $36.4 million figure. Consumers who cancelled during the trial period paid only shipping and handling for the free starter kit, and those fees were excluded when calculating the $36.4 million in net revenues. The consumers who paid the monthly fees that comprise the $36.4 million figure were those who did *not* cancel during the trial period. They were presumptively deceived and, absent a contrary showing by Gugliuzza, the fees they paid to Commerce Planet were properly deemed unjust gains.

Lastly, Gugliuzza challenges as arbitrary the district court's reliance on testimony from the FTC's expert that "most" consumers were deceived by Commerce Planet's misrepresentations. Gugliuzza has no basis to complain about this aspect of the district court's ruling. The court relied on the testimony in question to *reduce* the award from $36.4 million to $18.2 million. Given Gugliuzza's failure to produce any reliable evidence demonstrating what portion of the $36.4 million in net revenues should not be deemed unjust gains, the court could simply have awarded that amount and been done with it. The district court did not abuse its discretion when it instead decided to err on the side of caution by slashing the otherwise-permissible award in half. Any error in that regard could only have benefitted Gugliuzza.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

No costs.